**Opinion filed July 29, 2010**



# In The

# Eleventh Court of Appeals

_____

## Nos. 11-09-00165-CR & 11-09-00166-CR

_____

## JONATHON TODD MILES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause Nos. 21659 & 21660**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jonathon Todd Miles of the aggravated sexual assault of his sixteen-year-old cousin[1] and of her fifteen-year-old friend.[2] The jury assessed his punishment at confinement for fifty years in each case. We affirm.

### Issues on Appeal

At trial, appellant did not deny that he had sex with both girls. He did deny that he threatened either girl and maintained that the intercourse was consensual in that neither girl was threatened and both girls were willing participants. On appeal, appellant contends in a sole issue

---

[1] 11-09-00166-CR.

[2] 11-09-00165-CR.

in each case that the evidence is both legally and factually insufficient to support his convictions for aggravated sexual assault. Specifically, appellant argues that there is insufficient evidence of any aggravating factors such as threats.

*Applicable Law*

TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009) provides that a person commits aggravated sexual assault when he intentionally or knowingly commits sexual assault as defined by TEX. PENAL CODE ANN. § 22.011 (Vernon Supp. 2009) along with an aggravating factor such as placing the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person or threatening the victim that he would cause the death, serious bodily injury, or kidnapping of any person. Section 22.021 further provides that either the acts or the words of the defendant may convey the aggravating factors.

*Standards of Review*

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). Due deference must be given to the factfinder's determination, particularly concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9; *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996). The appellate court reviews the factfinder's weighing of the evidence and cannot substitute its judgment for that of the factfinder. *Cain*, 958 S.W.2d at 407; *Clewis*, 922 S.W.2d at 133.

*Evidence at Trial*

Appellant's cousin testified that, the day after her sixteenth birthday, she had gone to a high school football bonfire with appellant, her friend, her brother, and her brother's girlfriend. Appellant drove. Appellant was drinking, but neither she nor her friend were. After the bonfire, they all went to the travel camper where her brother and his girlfriend lived. At some point, her friend yelled out for her. Her friend looked frightened and said she needed to talk to her. Someone took them home. Her friend was very quiet and never did tell her anything.

Four days later, she was back at her brother's camper. Appellant was there. People were drinking mixed drinks, and she tasted one. She went outside to smoke, and appellant followed her. She had decided to walk home when appellant grabbed her by her hair. Appellant told her, "You know you want this." Appellant said it three or four times. She tried to get away, but he pulled her down to the ground. She thought that appellant was going to kill her. Appellant then pulled off her pants and underwear. He put his hand over her mouth and told her that, if she screamed, he would hit her. Appellant then penetrated her vagina with his penis. It hurt. Appellant then turned her around and "kept on going." His cousin testified that, when "he was done," appellant told her "not to worry, he didn't go inside" her so she would not get pregnant. Appellant also told her that this would bring them closer together.

Appellant's cousin testified that she was scared the whole time and did not tell anyone until her mother saw the scratches and bruises on her back a few days later. She made a statement to the police and then went to the hospital where she was in a psych ward. She said that, after the attack, she just wanted to die.

Appellant's cousin's friend testified that she was fifteen when she went to the bonfire with appellant, appellant's two children, his cousins – her girlfriend and the girlfriend's brother – and the brother's girlfriend. She had not met appellant before that night. He told her that night that he was twenty-two years old. At the bonfire, appellant gave her a beer to hold. Her brother saw that, became upset, and had words with appellant. The principal and the band director came over and told appellant to leave.

After that, they went to the camper where appellant's male cousin lived with his girlfriend. They were all outside talking when appellant told her to come inside because he wanted to talk to her about her brother. Appellant closed the door, locked it, and asked her if she wanted to have sex with him. She told him "no" and went around him. He put both of his hands on her chest and pushed her down hard enough on the bed to hurt her. He held her hands over

her head with one of his hands and put his other hand over her mouth. He told her that, if she screamed, he would kill her "right then." She was afraid that she was going to die.

Appellant took his hand from her mouth and removed her pants and underwear. He climbed on top of her and put his penis in her vagina. She testified that, while he was on top of her, "[h]e had the worst grin on his face ever." She described it as "like the deadliest scary grin" and like he "was getting his satisfaction." After appellant ejaculated, he told her to go out to her friend and that, if she said anything, he would come kill her and her brother.

Appellant testified that he had had sex with both girls. Appellant testified that, after the bonfire, no one stayed outside and that everyone went inside the camper. It was really tiny and they all "packed" inside. His sons were playing video games. He did not ask his cousin's girlfriend to come inside. Instead, she came in, and everybody but his sons left. She closed the door and asked him if he wanted to "do it." Appellant pointed to his sons, and she said that they could get under the blankets. She took her pants off under the blankets so that his sons would not see. He took off his pants but kept his boxers on. They were having sex when his boys looked over and there was a knock on the door. Appellant stated that he never restrained her, never threatened her, never hit her, never put his hands on her chest, and never threatened to kill either her or her brother.

Appellant testified that a few days later he was back at the camper "[c]hilling" and drinking screwdrivers. His sixteen-year-old cousin had asked him if he wanted a back massage. While she was rubbing his back, he turned around and she massaged his "front side." He decided to go out to his truck to get a shirt. His cousin came outside also. They were talking when his five-year-old son came out of the camper. Appellant told his son to go back inside and play video games. Appellant said that his cousin was telling him that he should stay with his current girlfriend and "not get back with [his] first baby mom."

Appellant testified, "[S]omehow it got in, you know, to me and her, and I cannot tell you the exact words, but I can tell you exactly what happened." Appellant then described how his cousin took off her pants and thong. She then said, "Let's get on the ground." While they were having sex, his cousin wanted to get on top. Appellant testified that at first he enjoyed having sex with her. When they were through, his cousin got up and walked home. Appellant testified that he did not threaten or hit his cousin, that he did not pull her hair, and that he did not throw her on the ground.

4

*Analysis*

Both victims described how appellant threatened them and how his actions made them fear for their lives. Appellant admitted to having sex with them but denied making any threats or threatening actions toward either girl. The jury as the finder of fact was the sole judge of the weight and credibility of each witness's testimony. As such, the jury could believe all, some, or none of a witness's testimony. This court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9.

After reviewing the evidence in the light most favorable to the verdict, we find that a reasonable factfinder could conclude that appellant committed both offenses. The evidence is not legally insufficient. When we view all of the evidence in a neutral light, we find that the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the conflicting evidence. The evidence is factually sufficient. The issues before this court are overruled.

*Holding*

The judgments of the trial court are affirmed.

TERRY McCALL

JUSTICE

July 29, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.